UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM WAYNE LEE, JR.                          CIVIL ACTION

versus                                          NO. 13-2508

BURL CAIN, WARDEN                               SECTION: "S" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, William Wayne Lee, Jr., is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On February 9, 2007, he was convicted of second degree

murder under Louisiana law.[1]  On June 28, 2007, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  The Louisiana First Circuit Court of Appeal then affirmed his conviction and sentence on March 26, 2008,[3] and the Louisiana Supreme Court denied his related writ application on November 10, 2008.[4]

On October 14, 2009, petitioner filed an application for post-conviction relief with the state district court.[5]  His application was denied in part on December 16, 2009,[6] and his remaining claims were then denied on April 5, 2010.[7]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on September 16, 2010,[8] and by the Louisiana Supreme Court on April 25, 2011.[9]

---

[1]  State Rec., Vol. VII of X, transcript of February 9, 2007, p. 181; State Rec., Vol. I of X, minute entry dated February 9, 2007; State Rec., Vol. II of X, jury verdict form.

[2]  State Rec., Vol. VII of X, transcript of June 28, 2007; State Rec., Vol. I of X, minute entry dated June 28, 2007.

[3]  State v. Lee, No. 2007 KA 1807 (La. App. 1st Cir. Mar. 26, 2008); State Rec., Vol. VIII of X.

[4]  State v. Lee, 996 So.2d 1066 (La. 2008) (No. 2008-K-0861); State Rec., Vol. VIII of X.

[5]  State Rec., Vol. VIII of X.

[6]  State Rec., Vol. VIII of X, Order dated December 16, 2009.

[7]  State Rec., Vol. VIII of X, Order dated April 5, 2010.

[8]  State v. Lee, No. 2010 KW 1010 (La. App. 1st Cir. Sept. 16, 2010); State Rec., Vol. VIII of X.

[9]  State v. Lee, 62 So.3d 82 (La. 2011) (No. 2010-KP-2341); State Rec., Vol. VIII of X.

On July 6, 2011, petitioner, through counsel, filed another post-conviction application with the state district court.[10]  That application was denied on September 28, 2011.[11] He then filed a motion for reconsideration on October 19, 2011,[12] and that motion was denied on May 2, 2012.[13] On July 27, 2012, the Louisiana First Circuit Court of Appeal then refused to consider his writ application challenging the denial of his post-conviction application,[14] and the Louisiana Supreme Court also denied relief without assigning reasons on April 12, 2013.[15]

On April 30, 2013, petitioner, through counsel, filed the instant federal application seeking *habeas corpus* relief.[16]  The state filed a response arguing that the federal application is a "mixed petition" asserting both exhausted and unexhausted claims and, moreover, is untimely.[17] Petitioner's counsel filed a reply to the state's response in which he attempts to refute the state's arguments.[18]

---

[10]  State Rec., Vol. VIII of X.

[11]  State Rec., Vol. IX of X, Order dated September 28, 2011.

[12]  State Rec., Vol. IX of X.

[13]  State Rec., Vol. IX of X, Order dated May 2, 2012.

[14]  State v. Lee, No. 2012 KW 0953 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. IX of X.

[15]  State v. Lee, 111 So.3d 1020 (La. 2013) (No. 2012-KP-1945); State Rec., Vol. IX of X.

[16]  Rec. Doc. 1.

[17]  Rec. Docs. 10 and 11.

[18]  Rec. Doc. 14.

Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted). That requirement applies to all levels of review in the state court system, meaning that a petitioner's federal claim must have been "fairly presented" to "*each* appropriate state court (including a state supreme court with powers of discretionary review)." Baldwin, 541 U.S. at 29 (emphasis added). Moreover, the claim must have been presented "in a procedurally proper manner according to the rules of the state courts." Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988) (quotation marks omitted).

The state argues that petitioner failed to exhaust his state court remedies with respect to the final claim asserted in his instant federal application, i.e. that the prosecutor engaged in misconduct and was laboring under a conflict of interest.[19]  The state argues that this claim, which was first asserted in petitioner's second state post-conviction application, was never "fairly presented" to the Louisiana First Circuit Court of Appeal in a procedurally proper manner.  In support of that argument, the state points to the very decision of the Court of Appeal, in which that court expressly stated that it would not consider petitioner's writ application containing the claim because it was not properly filed.  Specifically, the Court of Appeal held:

> **WRIT NOT CONSIDERED.** Relator's request for a return date was filed untimely to seek review of the denial of the application for postconviction relief.  <u>See</u> Uniform Rules of Louisiana Courts of Appeal, Rules 4-2 & 4-3.  Relator also failed to include a return date order as required by Rules 4-2 and 4-3.  <u>See</u> Uniform Rules of Louisiana Courts of Appeal, Rule 4-5(C)(11).[20]

It is clear that a claim presented in an untimely writ application has not been "fairly presented" for exhaustion purposes.  <u>See, e.g.</u>, <u>Murphy v. Cooper</u>, Civ. Action No. 12-1339, 2012 WL 5463864, at *5 (E.D. La. Oct. 1, 2012), <u>adopted</u>, 2012 WL 5463857 (E.D. La. Nov. 8, 2012).

In his reply to the state's response in this proceeding, petitioner counters that the Court of Appeal misapplied state law in reaching the foregoing decision.  However, he made that same argument to the Louisiana Supreme Court, and that court denied his writ application.  The state courts have therefore decided this issue against him, and the federal courts have no authority to

---

[19]  The state concedes that petitioner's other claims are exhausted.

[20]  <u>State v. Lee</u>, No. 2012 KW 0953 (La. App. 1st Cir. July 27, 2012).

overrule or second-guess the state courts' rulings on the interpretation or application of their own procedural rules.  The state courts are the final arbiters of state law.  See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir.1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)); see Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law.").

In light of the foregoing, the undersigned finds that petitioner's final claim was not fairly presented to the Louisiana First Circuit Court of Appeal and is therefore unexhausted.  See, e.g., Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009) ("Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor.  The purposes of the exhaustion requirement would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." (citation and quotation marks omitted)).  As a result, petitioner's federal application is a "mixed" petition asserting both exhausted and unexhausted claims and so is subject to dismissal *without* prejudice on that basis.  Alexander v. Johnson, 163 F.3d

906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

That said, the state argues that petitioner's federal application should instead be dismissed *with* prejudice because it is also untimely. For the following reasons, the state is correct.

<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment became "final." 28 U.S.C. § 2244(d)(1)(A).[21] Regarding finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. <u>Roberts v. Cockrell</u>, 319 F.3d 690, 693 (5th Cir. 2003).

<u>Butler v. Cain</u>, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on November 10, 2008. As a result, for AEDPA purposes, his state criminal judgment

---

[21]  Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the parties agree that § 2244(d)(1)(A) is the provision applicable in the instant case. <u>See, e.g.</u>, Rec. Doc. 1-1, pp. 8-9; Rec. Doc. 11, p. 2.

became final, and his federal limitations period therefore commenced, on February 9, 2009.[22]  See id. at 317-18.  That limitations period then expired one year later, unless the deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

After two hundred forty-six (246) days elapsed, petitioner tolled the federal limitations period on October 14, 2009, by filing his post-conviction application with the state district court.[23]  Although that application was denied, statutory tolling continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).  The state does not argue, and the state court record does not reflect, that petitioner's related writ

---

[22]  Because the ninetieth day fell on a Sunday, the deadline for seeking review by the United States Supreme Court was extended through the following Monday, February 9, 2009.  Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[23]  State Rec., Vol. VIII of X.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to this state application, the Court will simply use the date the application was signed as the filing date, in that the application obviously was placed in the mail no earlier than the date it was signed.

applications were untimely filed.  Accordingly, the undersigned finds that tolling did not cease until the Louisiana Supreme Court denied relief on April 25, 2011.[24]

Once the limitations period resumed running at that point, petitioner had one hundred nineteen (119) days of his federal limitations period remaining.  After an additional seventy-one (71) days elapsed, he again tolled the statute of limitations by filing his second post-conviction application on July 6, 2011.[25]  That application was then denied on September 28, 2011.[26]  The crucial issue vigorously disputed by the parties in this case is whether petitioner thereafter timely sought review of that denial in the Court of Appeal so as that his application remained "pending" and the federal limitations period remained tolled.

The state contends that petitioner did not seek timely review by the Louisiana First Circuit Court of Appeal.  The state argues that after the state district court denied relief, petitioner had only thirty days, i.e. until October 28, 2011, to seek review by the Louisiana First Circuit Court

---

[24]  State v. Lee, 62 So.3d 82 (La. 2011) (No. 2010-KP-2341); State Rec., Vol. VIII of X.  A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[25]  As the state notes in its response, petitioner also filed a motion for release of audio recordings on May 3, 2011.  State Rec., Vol. VIII of X.  However, motions seeking records are not considered "application[s] for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence.  Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003);  Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

[26]  State Rec., Vol. IX of X, Order dated September 28, 2011.

of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v.

Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL

2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Therefore, the state concludes that tolling ceased

on October 28, 2011, when his thirty-day deadline for seeking such review expired without a writ

application having been filed.

        Petitioner's counsel argues otherwise, contending that, under state law, the period for

seeking timely review of the district court's judgment was extended as a result of his filing of the

motion for reconsideration on October 19, 2011.  However, not only has counsel cited no authority

in support of that contention, the state courts found otherwise.  As already noted, the Court of

Appeal expressly held that the subsequently filed writ application was untimely, and the Louisiana

Supreme Court then denied petitioner's writ application challenging that finding.  Again, as already

noted, the Court of Appeal's finding turns on an issue of state law with respect to which the state

courts have the final word.  Moreover, it is clear that where, as here, the state courts held that a state

application was untimely, *no* statutory tolling whatsoever is available based on that filing.  As the

United States Supreme Court has expressly held, when a state post-conviction filing is rejected by

the state court as untimely, it cannot be considered "properly filed" within the meaning of §

2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005).  Simply put:  when a post-conviction

filing is untimely under state law, "that is the end of the matter for purposes of § 2244(d)(2)." Id.

at 414 (quotation marks and brackets omitted).   Further, the United States Fifth Circuit Court of

Appeals has observed:  "This appears to be so even if the grounds for the state court's ruling are

debatable.  In non-binding, unpublished opinions, this court has followed other courts in holding that

a state court's ruling as to whether a state habeas petition is 'properly filed' is dispositive." Koumjian v. Thaler, 484 Fed. App'x 966, 968 (5th Cir. 2012) (footnotes omitted), cert. denied, 134 S. Ct. 387 (2013).[27]

That alone, however, does not resolve the issue of the timeliness of petitioner's federal application. Even though he receives no credit for the time his writ application was pending before the Court of Appeal, he had also filed his motion for reconsideration with the state district court on October 19, 2011.[28] Therefore, this Court must also consider what effect, if any, *that* filing had on the federal limitations period.

Noting that the limitations period is tolled only by a "properly filed" application, the state contends that the motion for reconsideration cannot be considered "properly filed" because

---

[27] In hindsight, of course, it is apparent that the state court's finding that the writ application was untimely adversely affected the timeliness of petitioner's federal application. However, those adverse consequences could easily have been avoided. Where reasonable confusion exists as to whether state post-conviction filings are "properly filed," a petitioner who does nothing to protect his right to federal review risks that his federal application will be deemed untimely if the state courts ultimately find that a state court filing was improper. In light of that reality, the United States Supreme Court explained in 2005, long before the instant case arose, "[a] prisoner seeking state postconviction relief might avoid this predicament ... by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." Pace, 544 U.S. at 416. Petitioner and his counsel failed to avail themselves of that option.

[28] On that same date, petitioner also filed a motion to recuse the state district judge. However, as the state correctly argues, a motion to recuse does not toll the federal limitations period. Myers v. Terrell, Civ. Action No. 11-0353, 2012 WL 2915502, at *3 (E.D. La. July 17, 2012). Further, in any event, even if such a motion would in some circumstances toll the federal limitations period, it would make no difference in this case. For the reasons discussed *infra*, the undersigned recommends that the limitations period be tolled based on the filing of the motion for reconsideration, which was filed the same day and remained pending longer than the motion to recuse. Therefore, any tolling from the motion to recuse would simply overlap a period already tolled by the motion for reconsideration.

such motions are not allowed under state law. The state argues that the motion for reconsideration therefore had no effect on the federal limitations period.  The undersigned rejects that argument for two reasons.  First, the state has not pointed to any provision of state law which expressly or even implicitly prohibits the filing of such motions in the Louisiana state district courts.  Second, the United States Fifth Circuit Court of Appeals has tolled the federal statute of limitations based on a similar filing, despite the fact that state law (in that case, Texas law) could be read to prohibit such filings.  Emerson v. Johnson, 243 F.3d 931 (5th Cir. 2001); cf. Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009) (petitioner's conviction did not become final for AEDPA limitations purposes until after a ruling on a motion for rehearing, even though Louisiana law expressly prohibited such motions). Therefore, the Court finds that the motion for reconsideration was "properly filed" and tolled the federal limitations period.[29]

The Court must next determine how long that motion for reconsideration remained "pending" for purposes of 28 U.S.C. § 2244(d)(2).  As noted, the motion for reconsideration was denied by the state district court on May 2, 2012.[30]  Under Louisiana law, petitioner then had only thirty days, i.e. until June 1, 2012, in which to seek review of the district court's May 2 denial.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Although petitioner's counsel did in fact file a writ application

[29]  Because the limitations period continued to be tolled until October 28 as a result of the post-conviction application, no additional days elapsed untolled before the motion for reconsideration was filed on October 19, 2011.

[30]  State Rec., Vol. IX of X, Order dated May 2, 2012.

with the Court of Appeal on June 1, 2012, that writ application, fairly interpreted, challenged the correctness of the district court's original judgment denying post-conviction relief on September 28, 2011, *not* the correctness of the denial of the motion for reconsideration on May 2, 2011.[31] Moreover, it is evident that the state courts in fact interpreted the writ application in that manner, because, as noted, they denied the writ application as untimely filed – a ruling which would be correct if the writ application challenged the September 28 ruling, but seemingly incorrect if it challenged the May 2 ruling.  In light of that fact, the undersigned finds that statutory tolling ceased with respect to the motion for reconsideration, and the federal limitations period therefore resumed running, on June 1, 2012.

At that point, for the reasons already explained, petitioner had only forty-eight (48) days of the federal limitations period remaining.  Accordingly, he had only until July 19, 2012, to file his federal application, unless the limitations period was again tolled.

Clearly, petitioner is not entitled to further statutory tolling under § 2244(d)(2), in that he had no other "properly filed application[s] for State post-conviction or other collateral review" pending prior to that deadline.[32]

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland

---

[31]   A copy of that writ application appears in Volume IX of the state court record.

[32]   The only application pending before the state courts during that period was the writ application filed with the Louisiana First Circuit Court of Appeal on June 1, 2012.  However, for the reasons already discussed in detail, that application was not "properly filed" and therefore did not toll the federal limitations period.  See Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005).

v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  Petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).   In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that the United States Supreme Court recently held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  However, the Supreme Court took care to note: "We caution ... that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Here, petitioner does not submit any new evidence to make a colorable showing of actual innocence.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for *habeas corpus* relief had to be filed no later than July

19, 2012, in order to be timely.  His federal application was not filed until April 30, 2013, and, therefore, it is untimely and should be dismissed *with* prejudice on that basis, rather than simply dismissed *without* prejudice as a "mixed petition."

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petition for federal *habeas corpus* relief filed by William Wayne Lee, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this ninth day of September, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.